GILLESPIE, Chief Justice:
Clint Collier was convicted in the Circuit Court of Neshoba County .of assault and battery with intent to kill and murder. He was sentenced to serve three years in the penitentiary.
The State offered testimony that Aubrey and Billy Kilpatrick were cultivating land in a rural area to which access was made by a dirt road that passed defendant’s home. As Aubrey Kilpatrick was traveling south on this road he looked to his left and saw the defendant partly concealed in some undergrowth. The defendant was squatting down pointing a pistol at him. Kilpat-rick stated he was traveling thirty to thirty-five miles an hour and looked at the defendant while he drove about twenty or twenty-five feet, and the defendant kept the pistol aimed at him. Kilpatrick then heard the report of the pistol and felt the bullet strike his truck. He stated that he stopped within about six feet and ran in the direction where he had seen the defendant, but he could not find any trace of him. Kilpatrick then got in his truck and went on to his field where he picked up his farm worker. Later he called the district attorney and went before the justice of the peace and made out an affidavit, resulting in defendant’s arrest about 9:00 p. m., some three or four hours after the shooting incident. At the trial both Aubrey Kil-patrick and his brother Billy testified repeatedly that they had never had a quarrel or hard words with the defendant, and Aubrey Kilpatrick expressed wonder as to why defendant would be shooting at him. Defendant also testified he had never had any words with either of the Kilpatricks. He denied shooting at Aubrey Kilpatrick and denied that he owned a pistol. There is no other proof concerning a pistol.
Defendant first argues that the court abused its discretion in overruling his motion for a continuance. We cannot say that the court erred in this respect although the record indicates that the defendant had very little time to prepare his defense. However, the case must be reversed for another reason and we find it unnecessary to discuss this assignment of error.
Defendant also argues that the trial court erred in failing to quash the indictment because of the improper impaneling *204 of the grand jury and the systematic exclusion of blacks from the jury. The defendant failed to make out a prima facie case of the systematic exclusion of blacks from the jury lists in Neshoba County.
It is next contended that the defendant was entitled to a peremptory instruction. We are of the opinion that the evidence was sufficient to withstand a peremptory instruction.
Finally, it is argued that the evidence is insufficient to sustain the conviction. We are of the opinion that this assignment of error is well taken and that the verdict in this case is based on such contradictory and questionable testimony that the case should be retried and another jury allowed to pass upon defendant’s guilt. We base our opinion on the following circumstances.
1.Aubrey Kilpatrick repeatedly stated on direct and cross-examination that he had never had any words or quarrel with defendant and could not think of any reason why defendant would want to shoot at him. Billy Kilpatrick, Aubrey’s brother, who was a cotenant with his brother in the land near the defendant’s house, repeatedly testified on direct and cross-examination that while there might have been some disagreement over sixteenth section land,[1] there had never been any trouble between defendant and either of the Kilpatricks. Defendant also testified that there had never been any disagreements between himself and Aubrey Kilpatrick, and that he had no reason to shoot him. In direct conflict with his testimony given on the State’s case in chief, Billy Kilpatrick testified in rebuttal that in 1970-1971, “we” had an oat crop and defendant’s cows “stayed on it.” Asked if he went to defendant’s house, Billy Kilpatrick said, “We went in February, one time,” and he told defendant if he did not keep his cows off, he was going to kill them. He also testified on rebuttal that in 1971 he grew grain sorghum on this land and defendant’s cows got on it several times. He testified that he went to Clint Collier and told him he’d better keep them off or “we would kill them.” Asked if there was hard feelings between him and defendant, Billy Kilpat-rick testified, “Yes, sir; because any time anybody’s cows are eating up your crop there’s hard feelings.”
2. Aubrey Kilpatrick testified that defendant was seen by him through the pines as he traveled thirty or thirty-five miles per hour, and he knew it was Clint Collier. He watched defendant as he drove about twenty-five feet and slowed down. Then he heard the gun shoot and felt the bullet strike the truck. Then “I stopped as quick as possible and headed for the woods, towards where he was at and couldn’t find him.”
3. The bullet hole in the truck about which the State’s witnesses testified is shown on two color photographs introduced by the State. These photographs show a dent, not a hole, in the side of the truck. The State’s witnesses contend that this dent was made by a pistol of 38 or larger calibre.
The effort to bolster the State’s case by offering Billy Kilpatrick’s testimony, which was in direct conflict with the testimony offered by the State in its case in chief, raises serious questions concerning the validity of the State’s case. Aubrey Kilpat-rick’s testimony that he stopped his truck within about six feet after he heard the bullet strike his truck and that he ran in the direction of his assailant strains credulity. It is difficult to understand why an unarmed man would run directly toward an armed man who had just made a murderous assault on him.
*205 The testimony of Aubrey Kilpatrick was that he was about forty-five feet from the defendant when he fired. The missile made only a dent in the side of the truck, although the State insists that the gun was a powerful weapon.
Because of the stated circumstances and contradictions, this is one of those cases where the Court feels that the interest of justice demands that another jury should be permitted to pass upon the case. The evidence on behalf of the State cannot be safely accepted. Cobb v. State, 233 Miss. 54, 101 So.2d 110 (1958).
Reversed and remanded.
PATTERSON, INZER, SMITH and ROBERTSON, JJ„ concur.

. Tills reference to a possible disagreement concerning sixteenth section land was discussed in the defendant’s testimony. He testified that a tract of sixteentli section land had been leased by his mother, who died about 1965, and the lease had expired. In 1969 defendant employed an attorney to look into the title and the attorney advised defendant that the Kilpatricks had leased the land and that defendant as an heir of his mother had no claim to it.